**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____ x

Chaya Gurkov, individually on             :
behalf of herself and all others similarly    :
situated,                              :   Case No.
                                     :
             Plaintiff,             :
v.                                    :
                                   :   **CLASS ACTION COMPLAINT**
Real Kosher Ice Cream Inc.,           :
                                   :   **<u>JURY TRIAL DEMANDED</u>**
             Defendant.           :
                                   :
                                   :

_____ x

      Plaintiff, Chaya Gurkov (hereinafter "Plaintiff"), individually on behalf of herself and all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

      1.    This action seeks to remedy the deceptive and misleading business practices of Real Kosher Ice Cream Inc. (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Ice Cream and Sorbet products (hereinafter the "Products")[1] throughout the state of New York and throughout the country.

      2.    Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on

---

[1] The Products include, but are not limited to; Soft Serve On The Go Vanilla Chocolate, Soft Serve On The Go Razzle, Soft Serve On The Go Caramel, Soft Serve On The Go Parve Vanilla Chocolate, Soft Serve On The Go Sorbet Strawberry Mango, Soft Serve Peanut Butter Light.

its packaging that consumption of the Products may increase the risk of contracting invasive infections.

3.      As described in further detail below, the Products contain *Listeria monocytogenes*, which could lead to serious and life-threatening adverse health consequences.[2]  The risk of serious infection is particularly concerning for pregnant mothers, infants, the elderly, and immunocompromised individuals, who are highly susceptible to severe infection and even death from *Listeria monocytogenes*.[3]

4.      Defendant specifically lists both the active and inactive ingredients of the Products on the labeling; however, Defendant fails to disclose that the Products contain, or are at the risk of containing, *Listeria monocytogenes*.

5.      A few representative examples of Defendant's lack of disclosure on the Products are depicted below:

---

[2] *Listeria monocytogenes* is an organism which can cause serious and sometimes fatal infections in young children, frail or elderly people, and others with weakened immune systems.  Although healthy individuals may suffer only short-term symptoms such as high fever, severe headache, stiffness, nausea, abdominal pain and diarrhea, listeria infection can cause miscarriages and stillbirths among pregnant women.  *See*: https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/real-kosher-ice-cream-recalls-soft-serve-go-cups-because-possible-health-risk
[3] *Id.*

**Soft Serve On The Go Vanilla Chocolate**



**Soft Serve On The Go Razzle**



**Soft Serve On The Go Caramel**



**Soft Serve On The Go Parve Vanilla Chocolate**



**Soft Serve On The Go Sorbet Strawberry Mango**



**Soft Serve Peanut Butter Light**



6.      *Listeria monocytogenes* is responsible for causing the infection Listeria. Foodborne listeriosis is recognized to be one of the most dangerous and life-threatening foodborne diseases.[4]  High-risk groups for Listeria include pregnant women, infants, elderly, and immune compromised individuals, who have an elevated risk of developing severe symptoms, including death (the mortality rate is 20%-30%), making this bacteria a significant public health concern.[5]

7.      Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including *Listeria monocytogenes*.

8.      Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the ice cream and sorbet products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and even be life threatening.

9.      Unfortunately for consumers, like Plaintiff, the ice cream and sorbet Products they purchased contain *Listeria monocytogenes*.

10.     Defendant is using a marketing and advertising campaign that omits from the ingredients lists that the Products contain *Listeria monocytogenes*.  This omission leads a reasonable consumer to believe they are not purchasing a product with a known bacterium when in fact they are purchasing a product contaminated with *Listeria monocytogenes*.

11.     Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves.  As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing a product that is safe for consumption and does not contain any harmful bacterium.  Indeed, consumers expect the ingredient listing on the packaging and labels to accurately disclose the

---

[4] https://www.who.int/news-room/fact-sheets/detail/listeriosis
[5] *Id.*

9

ingredients within the Products.  Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, *Listeria monocytogenes*.

12.     Defendant conveys quality claims on their website that include "Better Ingredients", "Better Oversight", and "Better Production".[6] Furthermore, Defendant's "Better Ingredients" claim emphasizes control over ingredients that need to be left out, undoubtedly including ingredients harmful to a customer. The claims compel customers to expect a premium product and assure that the products are utmost in quality and safety. Representation of Defendants claims are depicted below:



**Better Ingredients**

It's what we put in. And also, what we leave out.



**Better Production**

Our ice cream chemists spend all day dreaming up out-of-the-carton delights.



**Better Oversight**

Beyond strict quality and kosher standards, we employ Cholov Yisroel's added supervision.

13.     Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *Listeria monocytogenes*, which is dangerous to one's health, well-being, and even life.  Nevertheless, Defendant does not list or mention *Listeria monocytogenes* anywhere on the Products' packaging or labeling.

14.     Plaintiff and Class Members relied on Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products when they purchased them.

---

[6] https://www.koshericecream.com/our-values/

15.     Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was an ice cream and sorbet product contaminated with a known bacterium that is harmful to consumers' health.

16.     That is because Defendant's Products containing, or at risk of containing, a known dangerous substance have no value.

17.     As set forth below, ice cream and sorbet products, such as Defendant's Products, are in no way safe for humans and are entirely worthless.

18.     In addition, Defendant claims "100% Natural" on some of their products, including, but not limited to, their Premium Strawberry Sorbet and Premium Mango Sorbet, when in fact they contain Sodium Alginate, a synthetic ingredient that is extracted by breaking down seaweed into pieces and stirred with a hot solution of an alkali, usually sodium carbonate.  The final step in filtration is precipitation of the alginate from the filtered solution, either as alginic acid or calcium alginate.[7]

19.     Representative examples of Defendant's lack of disclosure on the "100% Natural" Premium Strawberry Sorbet and Premium Mango Sorbet are depicted below:

---

[7]https://www.fao.org/3/y4765e/y4765e08.htm#:~:text=To%20extract%20the%20alginate%2C%20the,give%20a%20very%20thick%2precipitation%20of%20the%20alginate%20from%20the%20filtered%20solution,%20either%20as%20alginic%20acid%20or%20calcium%20alginate



20.     Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels.  Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

21.     Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§349 and 350.  Defendant also breached and continues to breach its warranties regarding the Products.

22.     Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

23.     Defendant manufactures, markets, advertises, and sells ice cream and sorbet products.

24.     Sales of ice cream and sorbet products are steadily increasing.  The United States ice cream and sorbet market size reached US$ 13.1 billion in 2022.[8] "Fortune Business Insights estimates the global ice cream market will reach $104.96 billion in 2029, up from $71.52 billion in 2021—a 46% jump in less than a decade due to the world's craving for ice cream."[9]

25.     Consumers have become increasingly concerned about the effects of ingredients in products that they consume.  Companies, such as Defendant, have capitalized on consumers' desire for ice cream and sorbet products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

26.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as *Listeria monocytogenes*, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

27.     The Products' packaging does not identify *Listeria monocytogenes*.  Indeed, *Listeria monocytogenes* is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of *Listeria monocytogenes* in the Products.  This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, *Listeria monocytogenes*.

28.     However, the Products contain, or are at risk of containing, *Listeria monocytogenes*.

---

[8] https://www.idfa.org/ice-cream-sales-trends
[9] https://www.fortunebusinessinsights.com/ice-cream-market-104847

13

29.     *Listeria monocytogenes* is a species of pathogenic (disease-causing) bacteria, that causes the disease Listeria.  It is able to survive and even grow under refrigeration and other food preservation measures, making it a resilient and dangerous bacteria.[10]  As a matter of fact, the bacteria is also able to survive freezing, such as the similar storage temperature of Defendant's ice cream and sorbet products.[11]

30.     Furthermore, the types of infection issues *Listeria monocytogenes* can cause include but is not limited to sepsis, meningitis, encephalitis, spontaneous abortion, or fever and even a healthy adult is susceptible to infection issues including gastroenteritis.[12]  Moreover, infection causes a 95% hospitalization rate and has a high case fatality rate of 20%, making *Listeria monocytogenes* infection quite dangerous.[13]  In addition, studies have concluded that Listeriosis is associated with high early post-recovery mortality, further exacerbating the danger and difficulty of treating the infection even with early recovery.[14]

31.     Defendant, Real Kosher Ice Cream Inc., is a manufacturer in the food service industry in the United States and is responsible for the manufacturing of ice cream and sorbet products.

32.     Defendant's recall is being initiated due to the presence of *Listeria monocytogenes* in products that are distributed by the largest retailers in the United States.[15]

33.     Defendant is a large and sophisticated corporation that is in the business of producing, manufacturing, selling, and distributing ice cream and sorbet products.

---

[10] https://www.fda.gov/food/foodborne-pathogens/listeria-listeriosis
[11] https://www.mayoclinic.org/diseases-conditions/listeria-infection/symptoms-causes/syc-20355269
[12] https://www.ncbi.nlm.nih.gov/books/NBK534838/
[13] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5736668/
[14] https://link.springer.com/article/10.1007/s15010-022-01872-1
[15] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/real-kosher-ice-cream-recalls-soft-serve-go-cups-because-possible-health-risk

34.     Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *Listeria monocytogenes* contamination.

35.     Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products.  Such knowledge is not readily available to consumers like Plaintiff and Class Members.

36.     Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

37.     Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing *Listeria monocytogenes* is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

38.     Defendant's misrepresentation and omission were material and intentional because people are concerned with what is in the products that they consume.  Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Products labels, and the listed ingredients.  Defendant knows that if they had not omitted that the Products contained *Listeria monocytogenes*, then Plaintiff and the Class would not have purchased the Products at all.

39.     Through its deceptive advertising and labeling, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article

15

is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

40.     Consumers rely on marketing and information in making purchasing decisions.

41.     By omitting that the Products include *Listeria monocytogenes* on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product with a harmful bacterium.

42.     Defendant's deceptive representation and omission are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

43.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

44.     Defendant's false, misleading, and deceptive misrepresentation and omission are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

45.     In making the false, misleading, and deceptive representation and omission described herein, Defendant knows and intended that consumers would pay a premium for a product marketed without the bacterium *Listeria monocytogenes* over comparable products not so marketed.

46.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

a.      Paid a sum of money for Products that were not what Defendant represented;

b.      Paid a premium price for Products that were not what Defendant represented;

c.      Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted; and

d.      Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

47.     Had Defendant not made the false, misleading, and deceptive representation and omission, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

48.     Plaintiff and the Class Members paid for Products that do not contain *Listeria monocytogenes*.  Since the Products do indeed contain *Listeria monocytogenes*, a harmful bacterium, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

49.     Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

50.     Plaintiff and Class Members read and relied on Defendant's representation about the benefits of using the Products and purchased Defendant's Products based thereon.  Had

Plaintiff and Class Members known the truth about the Products, they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

## JURISDICTION AND VENUE

51.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York, Defendant Real Kosher Ice Cream Inc. is a citizen of New York, and more than two-thirds of the class members reside outside the state of New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

52.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

53.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

**Plaintiff**

54.     Plaintiff is a citizen and resident of Brooklyn, New York.  During the applicable statute of limitations period, Plaintiff purchased and consumed Defendant's Products that contained *Listeria monocytogenes*, including Products that were subject to the recall, as well as Defendant's sorbet products that contained the 100% natural representation from various retail outlets in Brooklyn, New York, including, but not limited to, Moishes supermarket in Brooklyn, New York.

55.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products.  Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products.  The Products Plaintiff received were worthless because they contain the known harmful substance, *Listeria monocytogenes*. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**<u>Defendant</u>**

56.     Defendant, Real Kosher Ice Cream Inc., is a New York corporation with its principal place of business in Brooklyn, New York.  Real Kosher Ice Cream Inc. is a large manufacturer of ice cream and sorbet products in the United States.

57.     Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

<u>**CLASS ALLEGATIONS**</u>

58.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

59.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

60.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

61.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

62.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

63.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

64.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.   Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.   Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

       d.  Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

       e.  Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

65.   <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

66.   <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

67.   <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

68.   <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

       a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.   The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.   When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class Members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase their Products.

69.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

70.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

71.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

72.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

73.     There is no adequate remedy at law.

74.     Defendant misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

75.     Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have *Listeria monocytogenes*—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Products and

to use the Products when they otherwise would not have.  Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

76.     Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

77.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

78.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

79.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

<u>**SECOND CAUSE OF ACTION**</u>
<u>**VIOLATION OF NEW YORK GBL § 350**</u>
**(On Behalf of Plaintiff and the New York Subclass Members)**

80.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

81.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

        False advertising in the conduct of any business, trade, or commerce
        or in the furnishing of any service in this state is hereby declared
        unlawful.

82.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

        The term 'false advertising, including labeling, of a commodity, or
        of the kind, character, terms or conditions of any employment

opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

83.     Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe for use and doesn't list that the Products contain *Listeria monocytogenes*.

84.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

85.     Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

86.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

87.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

88.     Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

89.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

90.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and All Class Members)**

91.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

92.     Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are safe for use and do not contain *Listeria monocytogenes*.

93.     Defendant omitted that the Products contain a known bacterium from its ingredients labeling. This omission would lead reasonable consumers did not contain a known bacterium, when in fact, the Products were contaminated with *Listeria monocytogenes* as stated herein.

94.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

95.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

96.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

97.     Defendant knowingly breached the express warranties by including *Listeria monocytogenes* in the Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Products.

98.     Within a reasonable time after it knew or should have known, Defendant did not change the Products' labels to include *Listeria monocytogenes* in the ingredients list or to otherwise warn consumers that the Products contain, or are at risk of containing, *Listeria monocytogenes*.

99.     Defendant thereby breached the following state warranty laws:

    a.     Code of Ala. § 7-2-313;

    b.     Alaska Stat. § 45.02.313;

    c.     A.R.S. § 47-2313;

    d.     A.C.A. § 4-2-313;

    e.     Cal. Comm. Code § 2313;

    f.     Colo. Rev. Stat. § 4-2-313;

    g.     Conn. Gen. Stat. § 42a-2-313;

    h.     6 Del. C. § 2-313;

    i.     D.C. Code § 28:2-313;

    j.     Fla. Stat. § 672.313;

    k.     O.C.G.A. § 11-2-313;

    l.     H.R.S. § 490:2-313;

    m.     Idaho Code § 28-2-313;

    n.     810 I.L.C.S. 5/2-313;

    o.     Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.   R.I. Gen. Laws § 6A-2-313;

nn.   S.C. Code Ann. § 36-2-313;

oo.   S.D. Codified Laws, § 57A-2-313;

pp.   Tenn. Code Ann. § 47-2-313;

qq.   Tex. Bus. & Com. Code § 2.313;

rr.   Utah Code Ann. § 70A-2-313;

ss.   9A V.S.A. § 2-313;

tt.   Va. Code Ann. § 59.1-504.2;

uu.   Wash. Rev. Code Ann. § 6A.2-313;

vv.   W. Va. Code § 46-2-313;

ww.   Wis. Stat. § 402.313; and

xx.   Wyo. Stat. § 34.1-2-313.

100.   As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### VIOLATION OF THE NEW YORK STATE AGRICULTURE & MARKET LAW
### N.Y. AGRIC. & MKTS. LAW §§ 199-a
### (On Behalf of Plaintiff and All Class Members)

101.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

102.   Section 199-a of the New York Agriculture and Markets Law ("N.Y. Agric. & Mkts. Law") prohibits persons and corporations from manufacturing or selling in this state "any article of food which is adulterated or misbranded within the meaning of this statute."

103.    Food is considered adulterated if it "contains any poisonous or deleterious substance which may render it injurious to health."  N.Y. Agric. & Mkts. Law § 200(1).

104.    Food is considered misbranded if its "labeling is false or misleading in any particular."  N.Y. Agric. & Mkts. Law § 201(1).

105.    Defendant violates Section 199-a insofar as they manufacture and sell the Products, which are both adulterated and misbranded.

106.    The Products are "adulterated" because they contain *Listeria monocytogenes* which is undisputedly a deleterious substance.

107.    The Product is "misbranded" because their labeling fails to identify the fact that they contain, or are at risk of containing, *Listeria monocytogenes*.

### FIFTH CAUSE OF ACTION
### NEGLIGENCE PER SE
**(On Behalf of Plaintiff and All Class Members)**

108.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

109.    Violation of a statute constitutes per se negligence where it can be shown that a plaintiff belongs to the class of legislatively intended beneficiaries and that a right of action would be clearly in furtherance of the legislative purpose.

110.    Defendant is liable for negligence per se due to their violations of the Food Drug and Cosmetics Act (21 U.S.C. §§ 342, 343), described herein.  The Product is "adulterated" because it contains *Listeria monocytogenes*, which is undisputedly a deleterious substance.

111.    Pursuant to 21 U.S.C. § 342, food is considered "adulterated" if it "contains any poisonous or deleterious substance which may render it injurious to health."

112.   Pursuant to 21 U.S.C. § 343, food is deemed "misbranded" if its "labeling is false or misleading in any particular."  The Products are "misbranded" because their labeling fails to identify the fact that they contain, or are at risk of containing, *Listeria monocytogenes*.

113.   In addition, should this Court determine that Plaintiff lacks a private right of action under Section 199-a of the New York Agriculture and Markets Law (N.Y. Agric. & Mkts. Law), Defendant's violations of that statute (*see* Count IV, above) amount to negligence per se under New York law.

114.   Both the N.Y. Agric. & Mkts. Law and the FDCA are designed to protect consumers like Plaintiff from products, like the Products, which are adulterated with dangerous substances and/or labeled in a deceptive manner.  Accordingly, Defendant's violations of these statutes subject it to liability for negligence per se under New York law.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) An Order requiring Defendant to establish a blood testing program for Plaintiff and the Class, as well as to establish a medical monitoring protocol for Plaintiff and the Class to monitor individuals' health and diagnose at an early stage any ailments associated with exposure to *Listeria monocytogenes*;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and

willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.


Dated: August 14, 2023

**THE SULTZER LAW GROUP P.C.**

*/s/ Jason P. Sultzer*
Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Nick Suciu III*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

* *Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff and the Proposed Class*